IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:14-CV-41-BO

| | |
|---|---|
| EDWARD ALSTON WHITAKER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN COLVIN, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. )<br>_____ ) | **O R D E R** |

This matter is before the Court on the parties' cross-motions for judgment on the pleadings. [DE 14, 15]. A hearing on this matter was held in Elizabeth City, North Carolina on January 14, 2015. For the reasons discussed below, this matter is REMANDED for further consideration by the Commissioner.

BACKGROUND

Plaintiff applied for Title II disability insurance benefits and Title XVI supplemental security income on September 14, 2010, alleging disability beginning June 1, 2010 [Tr. 138–39, 146–51]. His date last insured was June 30, 2014. [Tr. 158]. These applications were denied initially and upon reconsideration. An Administrative Law Judge (ALJ) held a hearing on August 28, 2012, and rendered an unfavorable decision on January 15, 2013. The Appeals Council denied Mr. Whitaker's request for review, rendering the ALJ's decision the final decision of the Commissioner. Mr. Whitaker now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

Mr. Whitaker was 33 years old as of his alleged onset date. [Tr. 20, 223]. He has some high school education and past work experience as a laborer, machine oiler, shipping clerk,

forklift operator, and landscaper. [Tr. 34, 46, 48]. Mr. Whitaker alleges disability due to psychosis, depression, and history of deep vein thrombosis of the lower left extremity. Important historical dates include admission to Nash County Hospital in 1998 following gunshot wounds to the left chest, right chest, and left femoral area, a week-long involuntary commitment to Coastal Plain Hospital in 2011, and two hospitalizations following assaults on April 16, 2012, and May , 2012. [Tr. 253–54, 596–98, 503–505, 526–28].

## DISCUSSION

When a social security claimant appeals a final decision of the Commissioner, the Court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

In evaluating whether a claimant is disabled, an ALJ uses a multi-step process. First, a claimant must not be able to work in a substantial gainful activity. 20 C.F.R. § 404.1520. Second, a claimant must have a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *Id.* Third, to be found disabled, without considering a claimant's age, education, and work experience, a claimant's impairment must be of sufficient duration and must either meet or equal an impairment listed by the regulations. *Id.* Fourth, in the alternative, a claimant may be disabled if his or her impairment prevents the claimant from doing past relevant work and, fifth, if the impairment prevents the claimant from doing other work. *Id.*

The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

At step one, the ALJ determined that plaintiff met the insured status requirements and had not engaged in substantial gainful activity from his alleged onset date through his date last insured. [Tr. 16]. Mr. Whitaker's history of cocaine and alcohol abuse, psychosis, history of deep venous thrombosis of the left lower extremity, and history of gunshot wounds qualified as a severe impairment at step two but was not found to meet or equal a Listing at step three. [Tr16–17]. The ALJ concluded that plaintiff had the residual functional capacity (RFC) to perform the full range of light work. [Tr. 17–21]. While the ALJ found that Mr. Whitaker was incapable of performing his past relevant work, the ALJ concluded that plaintiff was not disabled within the meaning of the Act pursuant to Medical Vocational Rule 202.18 because plaintiff could perform the full range of light work. [Tr. 21–22.]

The ALJ's decision is not supported by substantial evidence. The evidence demonstrates that plaintiff has severe mental impairments, which is reflected in the ALJ's assessment at step two. The ALJ, however, did not account for any nonexertional impairments despite the fact that the record demonstrates a history of significant mental health limitations. The ALJ gave no explanation for this omission save the observation that "the record does not show the claimant's [sic] exhibited symptoms when he was sober and using medication as directed." [Tr. 21].

Mr. Whitaker was involuntarily committed to Coastal Plain Hospital in August 2011, where he was diagnosed with schizophrenia and psychosis. [Tr. 596–98]. In April 2012, he was reporting daily psychotic symptoms. [Tr. 497]. On August 2012, his dosage of Haldol was increased. [Tr. 592]. The ALJ's finding stands in direct contrast to the evidence that Mr. Whitaker was both taking his prescribed medicine and experiencing psychotic symptoms

3

between his involuntary commitment and August 2012. Moreover, the ALJ did not analyze plaintiff's potential limitations whatsoever. He simply found that plaintiff could respond to supervisors, interact with others, and perform tasks with no example, explanation, or analysis.

Without further explanation, it is unclear whether Mr. Whitaker had non-exertional limitations due to his mental health impairments. Any nonexertional limitations could directly affect plaintiff's ability to perform certain jobs in the light work occupational base, in which case reliance on the Medical Vocational Grids would be precluded. *Sherby v. Astrue*, 7667 F.Supp.2d 592, 598 (4th Cir. 2010). In that situation, "the Commissioner has the burden to prove by expert vocational testimony, and not the grids, that despite the claimant's combination of exertional and nonexertional impairments specific jobs exist in the national economy that the claimant can perform." *Id.* Accordingly, the appropriate course of action is to remand the case to the Commissioner for further consideration of plaintiff's mental health impairments, any nonexertional limitations they cause, their effect on his RFC, and further development of the credibility findings as they relate to plaintiff's mental health. Should the ALJ find that plaintiff has nonexertional limitations, a vocational expert should be called to address whether jobs plaintiff can perform exist in significant numbers in the economy.

The decision of whether to reverse and remand for benefits or reverse and remand for a new hearing is one which "lies within the sound discretion of the district court." *Edwards v. Bowen*, 672 F.Supp. 230, 236 (E.D.N.C. 1987). The Fourth Circuit has held that it is appropriate for a federal court to "reverse without remanding where the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974). Remand, rather than reversal, is required when the ALJ fails to

4

explain his reasoning and there is ambivalence in the medical record, precluding a court from "meaningful review." *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013) (citing *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012)). As discussed above, the appropriate action here is to remand the case to the Commissioner for further consideration of plaintiff's mental health impairments and any resultant nonexertional limitations. *Meyer v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011). ("assessing the probative value of competing evidence is quintessentially the role of the fact finder.").

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for judgment on the pleadings is GRANTED, and the matter is REMANDED to the Commissioner for further proceedings consistent with this decision.

SO ORDERED, this _28_ day of January, 2015.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE